**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

SHAWN WOODWARD,

                    Plaintiff,

      v.

SCOTT DAVIS, et al.,

                  Defendants.

No. 9:22-CV-00438
(DNH/CFH)

_____

**APPEARANCES:**                          **OF COUNSEL:**

SHAWN WOODWARD
26 South Pennsylvania Avenue
Atlantic City, New Jersey 08401
Plaintiff pro se

Attorney General for the                  RACHEL OUIMET, ESQ.
State of New York                         Assistant Attorney General
The Capitol
Albany, New York 12224
Attorney for defendants

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

Plaintiff pro se Shawn Woodward ("plaintiff"), who was, at all relevant times, in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983, alleging that defendants Correctional Officer ("C.O.") Scott Davis and C.O. Gavin Munden

_____

[1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(c).

(collectively "defendants")[2] violated his constitutional rights under the First and Eighth Amendments. See Dkt. No. 1 ("Compl."). Presently before the Court is defendants' motion for partial summary judgment brought pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). See Dkt. No. 60. Plaintiff opposed the motion. See Dkt. No. 67.[3] For the following reasons, it is recommended that defendants' motion be granted.

# I. Background

On review of defendants' motion, the facts will be related herein in the light most favorable to plaintiff as the nonmoving party. See Rattner v. Netburn, 930 F.2d 204, 209 (2d Cir. 1991) ("In assessing the record . . . to determine whether there is a genuine issue as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought.").

## A. Plaintiff's Factual Assertions[4]

Plaintiff alleges that, on July 19, 2019, while confined at Greene Correctional Facility ("Greene C.F."), nonparty correctional officers assaulted him. See Compl. at 9-

---

[2] Plaintiff also named C.O. Paige, John Doe #1, John Doe #2, and John Doe #3 as defendants in this action. See Compl. at 2-3; see also discussion infra Section IV.

[3] The nature of plaintiff's response to defendants' motion is unclear. See Dkt. No. 67 at 3 ("Plaintiff . . . request[s] . . . that judgment be entered in favor of Munden and . . . Davis," but also requests that "a trial date be schedule[d] as soon as possible"). However, in light of special solicitude, the undersigned will liberally construe plaintiff's submission as setting forth his general opposition to defendants' motion. See discussion infra Section II; see, e.g., Herzog v. McLane Ne., Inc., 999 F. Supp. 274, 275 (N.D.N.Y. 1998) ("[B]ecause [the p]laintiff proceeds pro se, the Court will liberally construe [the p]laintiff's [submissions] to raise the strongest arguments they suggest.").

[4] To the extent that plaintiff's exhibits are relevant to the causes of action at issue in the present motion, the Court will consider them as part of the complaint. See Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004) ("A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint.") (internal quotation marks and citations omitted).

10.[5]  Plaintiff subsequently "filed letters of complaint [with] the Commissioner of DOCCS [and the] Inspector General and filed institutional grievances" related to the assault.  Id. at 10.

In August 2019, plaintiff was transferred from Greene C.F. to Franklin Correctional Facility ("Franklin C.F.").  See Compl. at 10.  "Plaintiff was not seen by medical staff until September 3, 2019," following the July 19, 2019, assault.  Id.  Thus, "[p]laintiff wrote a letter of complaint to [Franklin C.F.'s] superintendent and filed a grievance" against the medical staff.  Id.

"On September 4, 2019, while plaintiff was in the mess hall[,] [d]efendant Correctional Sergeant Davis [ ] walked up to plaintiff and said 'you ever heard don't shit where you eat?'"  Compl. at 10-11.  "Plaintiff remained quiet and she repeated herself[;] again plaintiff remained quiet."  Id. at 11.  "Davis then told plaintiff to go out into the mess hall's foyer area."  Id.  "Plaintiff went and stood by the bathroom door."  Id.  "Davis then came into the foyer area and smacked plaintiff in the face saying, 'I don't care about your grievances against [Greene C.F.'s] staff, but you don't write shit up in my jail[;] drop the grievances or go to SHU."  Id.  "Davis [then] told plaintiff to go to his dorm."  Id.  As a result of this interaction, plaintiff suffered a "stinging . . . pain in [his] face . . . [for] maybe about twenty minutes, top[s]."  Dkt. No. 60-3 at 147.

"On September 5, 2019," at approximately 6:30 p.m. in the G-Dorm, "[d]efendant G.R. Munden [ ] called plaintiff to the desk," where defendant C.O. Paige was also present.  Compl. at 11-12.  Munden asked plaintiff if he withdrew his grievance and plaintiff responded that "once a grievance is filed it cannot be withdrawned [sic]."  Id. at

---

[5] Citations are to the pagination generated by CM/ECF, located in the header of each page.

3

12.  Paige accused plaintiff of lying and Munden asked, "didn't you get warned by Sergeant Davis."  Id.  Plaintiff responded that "Davis did not speak to [him]," and "Paige stated that he would speak to [ ] Davis about plaintiff."  Id.

"At approximately 7:00 p.m., [ ] Munden and [nonparty] Inmate John Doe w[ere] at the desk talking."  Compl. at 12.  "Munden pointed at plaintiff while plaintiff was in his bed area."  Id.  "Plaintiff left his bed area to go to the dayroom and overheard [ ] Munden tell Inmate John Doe 'All you have to do is punch [plaintiff] in the face and they coming.'" Id. at 12-13.  "At approximately 7:05 p.m., Inmate John Doe came into the dayroom, started talking to another inmate that was sitting close to plaintiff and then swung at plaintiff."  Id. at 13. "Plaintiff[,] who was watching Inmate John Doe, ducked the punch, punched Inmate John Doe in the face[,] and a fight broke out."  Id.  Seconds later, Munden, Paige, "Correctional Sergeants John Doe #1 and #2," and "Correctional Officer John Doe #3" "ran into the dayroom" and "started beating [p]laintiff up."  Id.  "Plaintiff attempted to break free from the beating" and flee from the dayroom, but was grabbed by Paige, who uttered a racial slur and punched plaintiff in the face.  Id.  "Munden and Paige then began to punch plaintiff in the face, stomach, head, and back," while John Does #1, #2, and #3 "cheer[ed]."  Id. at 13-14.  Plaintiff lost consciousness.  See id. at 14.

Plaintiff regained consciousness in the Franklin C.F. foyer.  See Compl. at 14. "He was handcuffed from behind, laying on the floor and [ ] listening . . . [to John] Does #1 and #2 [tell] Munden, Paige[,] and Doe #3 what to write on plaintiff's misbehavior report ('MBR')."  Id.  "Plaintiff was then kicked in the ribs by [ ] Paige and told to stand up."  Id.  "Plaintiff couldn't stand up properly so [ ] Doe #2 told [ ] Munden, Paige, and

Doe #3 to put plaintiff in the back of the van." Id. Plaintiff was transported to the hospital and "told to wait in the inmate sitting area by kneeling on a wooden bench for 30 minutes." Id. "Finally, when plaintiff was allowed to see the nurse, plaintiff couldn't stand up and was dragged into the . . . medical room." Id. "Plaintiff was told to stand in a corner," and five minutes later, John Doe #1 and John Doe #2 entered the room and told plaintiff to "sign whatever [the nurse] tells you [to sign]." Id. at 15. John Doe #2 told plaintiff that if he "heard anything out of [p]laintiff, be it a letter, call, grievance or anything . . . complaining about any staff [that] [p]laintiff wouldn't make it home 3 ½ months later." Id.

A nonparty nurse treated plaintiff and told him to sign "some forms saying he was in a fight." Compl. at 15. "Plaintiff signed the forms [and] then he was walked out to a van where [John] Does #1 and #2 were waiting." Id. John Doe #2 told plaintiff "not to forget what [p]laintiff was told inside because [p]laintiff's life depended on it." Id. at 15-16. Plaintiff was taken to his dorm at Franklin C.F. "without further incident that night." Id. at 16.

As a result of the September 5, 2019, assault, plaintiff suffered swelling in his eye, jaw, wrist, and knee; headaches; pain in his abdomen, back, legs, and right arm; and a loss of appetite. See Compl. at 17.

### B. Defendants' Factual Assertions[6]

"At all times relevant, [p]laintiff . . . was an incarcerated individual in the custody of [DOCCS]." Dkt. No. 60-2 at 1, ¶1. "Plaintiff was housed at [Franklin C.F.] from August 1, 2019 through September 9, 2019, and again from September 27, 2019

---

[6] In support of their motion, defendants filed a Statement of Material Facts. See Dkt. No. 60-2.

through October 11, 2019." Id. at 1, ¶2. "In September of 2019, [d]efendant Davis was assigned as the correction officer to Rounds 1 at Franklin C.F." Id. at 1, ¶3. "As the correction officer assigned to Rounds 1, [ ] Davis was responsible for picking up count slips and delivering food trays throughout the facility, responding to emergencies, and escorting incarcerated individual to the infirmary after a use of force." Id. at 1-2, ¶4.

"Plaintiff's description of the Sergeant Davis, for whom he alleges used excessive force and retaliated against him, is a short female, in her fifties with blonde or dirty blond hair." Dkt. No. 60-2 at 2, ¶5. "In September 2019, [ ] Davis was a 56-year-old male standing six-foot one inch at 275 lbs. with brown hair." Id. at 2, ¶6. "Davis was not a female in September 2019." Id. at 2, ¶7. "Davis never held the rank of sergeant at Franklin C.F., nor has he ever held the rank of sergeant with DOCCS." Id. at 2, ¶8. "Davis did not use force against [p]laintiff on September 4, 2019." Id. at 2, ¶9. "Davis had no knowledge of any grievances [p]laintiff had filed against officers at [Greene C.F."] or any other facility." Id. at 2, ¶10. "The only interaction [ ] Davis had with [p]laintiff was on September 5, 2019 when he escorted [p]laintiff from the G-1 dorm to the infirmary under the Supervision of a sergeant." Id. at 2, ¶11. "Davis did not retaliate against [p]laintiff in any way or at any time." Id. at 2, ¶12.

"Defendant Munden was the correction officer assigned as the dorm officer of the G-1 dorm at Franklin C.F. where [p]laintiff was housed on September 5, 2019." Dkt. No. 60-2 at 3, ¶13. "As the G-1 Dorm Officer, [ ] Munden was responsible for making rounds, monitoring, and ensuring the safety and security of the incarcerated individuals housed in the G-1 dorm." Id. at 3, ¶14. "Munden was the only officer assigned to the G-1 dorm and there were approximately 60 incarcerated individuals housed in the dorm

at the relevant time." Id. at 3, ¶15. "There was no Correction Officer with the last name Paige working in the G-1 dorm with [ ] Munden on September 5, 2019." Id. at 3, ¶16. "There was no Correction Officer with the last name Paige working at Franklin C.F. at any time in 2019." Id. at 3, ¶17. "Munden denies knowledge of any grievances [p]laintiff allegedly filed at Franklin or any other Correctional Facility." Id. at 3, ¶18. "Munden denies ever having a conversation with [p]laintiff about any grievance he may have allegedly filed." Id. at 3, ¶19. "Munden denies directing any incarcerated individual to fight [p]laintiff." Id. at 3, ¶20. "Munden denies having any prior knowledge that a fight between [p]laintiff and another incarcerated individual was going to occur." Id. at 3, ¶21. "Munden denies using excessive force against [p]laintiff on September 5, 2019 or at any time." Id. at 4, ¶22.

"Munden issued [p]laintiff a Misbehavior Report charging [p]laintiff with the following rule violations: Fighting (Rule 100.13), Disorderly Conduct (Rule 100.15), Direct Order (Rule 106. 10), Violent Conduct (Rule 104.11), Creating a Disturbance (Rule 104.13)." Dkt. No. 60-2 at 4, ¶23; see Dkt. No. 60-5 at 6 (explaining that, on September 5, 2019, at 7:05 p.m., Munden witnessed plaintiff "exchanging closed fist blows to the upper torso and head area with [another] Inmate . . . in the TV room"). "At [p]laintiff's disciplinary hearing, he pled guilty to violating the following Rules: Violent Conduct (Rule 104.11) and Fighting (100.13)." Dkt. No. 60-2 at 4, ¶24; see Dkt. No. 60-5 at 8.

## II. Legal Standard

A motion for summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the burden of demonstrating the absence of disputed material facts by citing to "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c). A fact is material if it "might affect the outcome of the suit," as determined by the governing substantive law; a "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

If the moving party meets this burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248 (citation omitted); see Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary judgment motion, the district court . . . must resolve all ambiguities and draw all reasonable inferences against the movant." Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). Still, the nonmoving party cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986) (citing Quarles v. Gen. Motors Corp., 758 F.2d 839, 840 (2d Cir. 1985) (per curiam)); see also Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) ("[M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist.") (citation omitted).

Where a party seeks judgment against a pro se litigant, or a pro se litigant moves for summary judgment, the Court must afford the pro se litigant special solicitude. See Treistman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (per curiam). As the Second Circuit explained,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," that a pro se litigant's submissions must be construed "liberally," and that such submissions must be read to raise the strongest arguments that they "suggest[.]" At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, or arguments that the submissions themselves do not "suggest," that we should not "excuse frivolous or vexatious filings by pro se litigants," and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law[]" . . . .

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds pro se, . . . a court is obligated to construe his pleadings liberally.") (citations and quotation marks omitted).

## III. Discussion

Plaintiff alleges that Davis and Munden violated his Eighth Amendment rights when they used excessive force against him. See Compl. at 10-14. Plaintiff also raises First Amendment claims, asserting that Davis slapped and threatened him and Munden assaulted him in retaliation for filing grievances against the medical staff. See id. at 10, 16-17. Defendants move for partial summary judgment, arguing that (1) Davis had no personal involvement in plaintiff's Eighth Amendment or First Amendment claims;

(2) nevertheless, plaintiff's Eighth Amendment claim against Davis fails as a matter of law; and (3) plaintiff's First Amendment retaliation claims against Davis and Munden also fail as a matter of law.[7]  See Dkt. No. 60-1 at 11-19.

### A. Personal Involvement of Davis

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)).  Thus, "[i]n order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant."  Greene v. Walsh, No. 9:05-CV-00327 (TJM/DE), 2008 WL 4517975, at *5 (N.D.N.Y. Sept. 29, 2008) (citing Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986)).[8]

Here, plaintiff alleges that a female Sergeant ("Sgt.") Davis approached him in the mess hall on September 4, 2019, regarding grievances that plaintiff had filed, and subsequently smacked him.  See Compl. at 11.  Plaintiff testified that Sgt. Davis is a short woman, in her fifties, with blonde or dirty blonde hair.  See Dkt. No. 60-3 at 51 (testifying that Sgt. Davis was "[s]hort, blond, dirty blondish hair, like older, say about in the 50s . . . Hell, like [a] white lady").  Plaintiff further testified that he knew this female sergeant to be Sgt. Davis because he worked in the mess hall and saw her every day, and she wore a "gold nametag with a black print [that] said, Davis."  Id. at 52.

---

[7] "Defendants do not move for summary judgment as to [p]laintiff's Eighth Amendment excessive force claims against Defendant Munden."  Dkt. No. 60-1 at 6.
[8] All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

However, in September 2019, defendant C.O. Scott Davis was a 56-year-old male, that was six-foot and one-inch tall, weighed 275 pounds, and had brown hair. See Dkt. No. 60-4 at 2. Davis submitted a sworn declaration, stating that (1) "[p]laintiff's description of [Sgt. Davis] . . . does not describe [him]," specifically he is "not a female, nor was [he] a female in 2019"; (2) he has "never been a sergeant at Franklin C.F., nor ha[s he] ever held the rank of sergeant with DOCCS"; and (3) he "did not have any interactions with [p]laintiff on September 4, 2019." Id. Further, according to Franklin C.F. employment records, there has never been a female Sgt. Davis or any sergeant at Franklin C.F. with the last name Davis. See Dkt. No. 60-6 at 2, ¶6. Plaintiff has not responded to these contentions. See generally Dkt. No. 67; see also Taylor v. City of New York, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way."); McCluskey v. Nunziata, No. 21-CV-4483 (JMA/ARL), 2023 WL 9425408, at *9 (E.D.N.Y. Dec. 14, 2023) (recommending dismissal of the plaintiff's § 1983 claims where the defendants argued that the plaintiff failed to establish their personal involvement and the plaintiff did not respond to this argument), report and recommendation adopted, 2024 WL 328868 (E.D.N.Y. Jan. 29, 2024).

Based on the facts presented, it appears that C.O. Scott Davis has been misidentified as the Sgt. Davis who interacted with plaintiff on September 4, 2019. See Herrera v. Finan, 176 F. Supp. 3d 549, 568-69 (D.S.C. 2016) ("Plaintiff's failure to sue to the proper parties is not a minute technical failure that the Court is at liberty to overlook. Personal participation of a defendant is a necessary element of a § 1983 claim[.]")

(citation omitted), aff'd, 709 F. App'x 741 (4th Cir. 2017).  Specifically, even liberally construing plaintiff's submissions, there is no indication that C.O. Scott Davis—a 56-year-old brunette male that was six-foot-one and 275 pounds— was involved in the alleged use of excessive force against plaintiff on September 4, 2019, in retaliation for grievances plaintiff previously filed.  See Harnage v. Reddivari, No. 3:17-CV-356 (AWT), 2020 WL 5549073, at *1 n.2 (D. Conn. Sept. 16, 2020) (dismissing the inmate plaintiff's claims against defendant Ernest, where the defendants provided sufficient information to demonstrate that Ernest was misidentified as a defendant); see also Bellamy v. Dewitt, No. 4:19-CV-1673 (RBH/KDW), 2020 WL 3441484, at *5 (D.S.C. June 4, 2020) (recommending that summary judgment be granted for lack of personal involvement where the plaintiff "misidentified the John Doe defendant as [d]efendant Grate" and there was "no indication that [d]efendant Grate was involved in the use of alleged excessive force in handcuffing [the p]laintiff"), report and recommendation adopted, 2020 WL 3440861 (D.S.C. June 23, 2020).  Thus, plaintiff has failed to establish that C.O. Scott Davis was personally involved in the alleged deprivation of his constitutional rights as required by § 1983.  See Torres v. Carry, 800 F. Supp. 2d 577, 582-84 (S.D.N.Y. 2011) (dismissing the plaintiff's claim against defendant Carey, where "Carey was misidentified as the sergeant who injured [the plaintiff's] hand" and, thus, there was "no genuine issue of material fact as to whether Carey was personally involved in the alleged incident").

Accordingly, it is recommended that plaintiff's First and Eighth Amendment claims against C.O. Scott Davis be dismissed for lack of personal involvement.  See

Wright, 21 F.3d at 501.  In any event, as discussed below, plaintiff's claims against

Davis lack merit.  See discussion infra Subsection III.B, C.

## B. Plaintiff's Eighth Amendment Claim Against Davis

"The Eighth Amendment's prohibition against cruel and unusual punishment

encompasses the use of excessive force against an inmate, who must prove two

components": (1) "objectively, that the defendant's actions violated 'contemporary

standards of decency,'" and (2) "subjectively, that the defendant acted wantonly and in

bad faith."  Burroughs v. Mitchell, 325 F. Supp. 3d 249, 269 (N.D.N.Y. 2018) (quoting

Blyden v. Mancusi, 186 F.3d 252, 262-63 (2d Cir. 1999), and citing Hudson v. McMillian,

503 U.S. 1, 8 (1992)).  "In this regard, while 'a de minimis use of force will rarely suffice

to state a constitutional claim,' the malicious use of force to cause harm constitutes an

Eighth Amendment violation per se because in such an instance 'contemporary

standards of decency are always violated.'"  Id. (quoting Romano v. Howarth, 998 F.2d

101, 105 (2d Cir. 1993), and Blyden, 186 F.3d at 263).  Thus, "[t]he key inquiry into a

claim of excessive force is 'whether force was applied in a good-faith effort to maintain

or restore discipline, or maliciously and sadistically to cause harm.'"  Id. (quoting

Hudson, 503 U.S. at 7, and citing Whitley v. Albers, 475 U.S. 312, 321-22 (1986)); see

Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (emphasizing that the nature of the force

applied is the "core judicial inquiry" in excessive force cases, not whether a certain

quantum of injury was sustained) (citations omitted).

The objective component requires a showing "that the injury actually inflicted [is]

sufficiently serious to warrant Eighth Amendment protection."  Hudson, 503 U.S. at 8

(internal quotation marks and citation omitted).  "[N]ot every push or shove, even if it

may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights, and not [ ] every malevolent touch by a prison guard gives rise to a federal cause of action." Perry v. Stephens, 659 F. Supp. 2d 577, 583 (S.D.N.Y. 2009) (citing Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997), Hudson, 503 U.S. at 9, and Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)) (internal quotation marks omitted). Thus, "[t]he Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Hudson, 503 U.S. at 9-10 (internal quotation marks and citations omitted).

The subjective component requires a plaintiff to demonstrate "that 'the defendant had the necessary level of culpability, shown by actions characterized by wantonness in light of the particular circumstances surrounding the challenged conduct.'" Randolph v. Griffin, 816 F. App'x 520, 523 (2d Cir. 2020) (summary order) (quoting Harris, 818 F.3d at 63). In determining whether the defendant acted in a malicious or wanton manner, the Second Circuit has identified five factors to consider:

> the extent of the injury and the mental state of the defendant[;] . . . the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response.

Scott v. Coughlin, 344 F.3d 282, 291 (2d Cir. 2003) (internal quotation marks and citations omitted).

Here, plaintiff claims that Davis violated his Eighth Amendment rights on September 4, 2019, when he "smacked plaintiff in the face saying, 'I don't care about

14

your grievances against [Greene C.F.'s] staff, but you don't write shit up in my jail[;] drop the grievances or go to SHU.'" Compl. at 11; see Dkt. No. 60-3 at 61 (testifying that that Davis slapped him with an open hand on the left side of his face). However, defendants argue that plaintiff's Eighth Amendment claim against Davis should be dismissed because "the force alleged . . . is clearly de minimis[.]" Dkt. No. 60-1 at 19.[9]

"In cases where the defendants applied only a degree of roughness that is common in prison contexts," and the "plaintiff has not claimed a lasting or even fleeting injury resulting from the defendant's conduct, courts in this circuit have routinely held that such conduct is insufficiently serious to support an Eighth Amendment claim." Burroughs v. Petrone, No. 9:15-CV-818 (DNH/ATB), 2018 WL 7291419, at *10 (N.D.N.Y. Dec. 27, 2018) (internal quotation marks and citations omitted), report and recommendation adopted, 2019 WL 587090 (N.D.N.Y. Feb. 13, 2019); see Boddie, 105 F.3d at 862 (holding that the inmate's claims that he was "bumped, grabbed, elbowed, and pushed" by prison officials was insufficient to state an Eighth Amendment claim, as "[t]he force [the plaintiff] describes is not sufficiently serious or harmful to reach constitutional dimensions"); see also Mayo v. Lavis, No. 11-CV-869S, 2016 WL 2756545, at *7 (W.D.N.Y. May 12, 2016) (holding that the plaintiff's "Eighth Amendment claim would fail because even assuming that [the defendant] pushed [the plaintiff] onto the bench, punched him in the face, and threw him on the floor, the force used was de minimis under the caselaw") (citations omitted); Robinson v. Henschel, No. 10-CV-6212

---

[9] The undersigned notes that plaintiff does not dispute defendants' contention that C.O. Davis's alleged use of force was de minimis. See generally Dkt. No. 67; see also Sanders v. Torres, No. 9:19-CV-697 (GTS/CFH), 2021 WL 799263, at *12-13 (N.D.N.Y. Feb. 8, 2021) (dismissing the plaintiff's excessive force claim against C.O. Sadowski where the plaintiff did not dispute the defendants' contention that C.O. Sadowski's use of force was de minimis), report and recommendation adopted, 2021 WL 797014 (N.D.N.Y. Mar. 2, 2021).

(PGG), 2014 WL 1257287, at *7 (S.D.N.Y. Mar. 26, 2014) (granting summary judgment in favor of the defendants where the inmate plaintiff claimed that his hand was slammed repeatedly against the wall but suffered no injuries).

"[I]t is [ ] clear under the law of this Circuit that an open-handed slap—the most severe contact alleged by plaintiff—is not sufficiently 'repugnant to the conscience of mankind' to give rise to an Eighth Amendment claim."  Santiago v. Campisi, 91 F. Supp. 2d 665, 674 (S.D.N.Y. 2000) (citations omitted); see, e.g., Sanders v. Torres, No. 9:19-CV-697 (GTS/CFH), 2021 WL 799263, at *12 (N.D.N.Y. Feb. 8, 2021) ("C.O. Sadowski used de minimis force by allegedly 'striking [the plaintiff] on the right side of [his] face[.]'") (citations omitted), report and recommendation adopted, 2021 WL 797014 (N.D.N.Y. Mar. 2, 2021); Lewis v. Huebner, No. 17-CV-8101 (KMK), 2020 WL 1244254, at *6 (S.D.N.Y. Mar. 16, 2020) ("[A] single slap that results in no injury constitutes unactionable, de minimis force.") (citations omitted); Walton v. Lee, No. 15-CV-3080 (PGG), 2019 WL 1437912, at *5 (S.D.N.Y. Mar. 29, 2019) ("[A] single slap does not support an excessive force claim.") (citations omitted); Johnson v. Renda, No. 96-CV-8613 (RPP), 1997 WL 576035, at *1 (S.D.N.Y. Sept. 15, 1997) (explaining that a single, spontaneous slap to the plaintiff's face was insufficient to establish a constitutional violation).  Thus, even viewing the record in the light most favorable to plaintiff as the nonmoving party, C.O. Davis used de minimis force by smacking plaintiff in the face. See Compl. at 10, 16; see, e.g., Thomas v. Morley, No. 20-CV-07520 (PMH), 2022 WL 394384, at *10 (S.D.N.Y. Feb. 9, 2022) ("As to [C.O.] Edge, [p]laintiff suggests that . . . Edge grabbed [p]laintiff's shirt, slapped [p]laintiff, and called [p]laintiff 'a fuckin' baby rapist.'  Such barebones allegations, reflecting nothing more than the most de minimis

use of force, without any mention of Edge's mental state or the impetus for the

interaction, cannot state a claim for excessive force under the Eighth Amendment

against Edge.") (citations omitted).

Indeed, a careful examination of plaintiff's submissions reveals that plaintiff does

not allege that he sustained any lasting injuries[10] from C.O. Davis's alleged use of force.

See generally Compl. at 4; see also Dkt. No. 67.  Plaintiff testified that he only suffered

a "stinging . . . pain in [his] face" for "about twenty minutes, top[s]," after the smack,

which is insufficient to state an Eighth Amendment Claim.  Dkt. No. 60-3 at 147; see

Espinal v. Goord, No. 00-CV-2242 (AJP), 2001 WL 476070, at *13 n.46 (S.D.N.Y. May

7, 2001) ("[T]his Court holds that [the inmate plaintiff's] allegations that [the C.O.

defendant] hit him two or three times in the face, causing his face to turn red, but

resulting in no other injuries and described by [the plaintiff] himself as 'really nothing' are

insufficient to state an Eighth Amendment claim.") (citations omitted).  "The absence of

injury or pain indicates that the force alleged was insufficient to sustain a claim for

excessive force under the Eighth Amendment."  Sanders, 2021 WL 799263, at *12

(citing Boddie, 105 F.3d at 862 (granting summary judgment in favor of the C.O.

defendants as to the plaintiff's Eighth Amendment excessive force claim where the

plaintiff did "not maintain that he experienced any pain or injury as a result of the

physical contact")); see Rodriguez v. City of New York, 802 F. Supp. 2d 477, 481

(S.D.N.Y. 2011) (granting summary judgment on the plaintiff's excessive force claims

---

[10] The only lasting injuries that plaintiff claims are related to the alleged September 5, 2019, assault by
Munden, Paige, and John Does #1, #2, and #3.  See Compl. at 17.

where the medical record noted no visible injuries and the plaintiff complained only of pain in the back of his neck).

Thus, "even assuming [p]laintiff could satisfy the subjective element of his excessive force claim, the [undersigned] finds no basis to conclude that the alleged use of force was objectively harmful enough or sufficiently serious to violate the Eighth Amendment."[11]  George v. Cnty. of Westchester, No. 20-CV-1723 (KMK), 2021 WL 4392485, at *9 (S.D.N.Y. Sept. 24, 2021) (citing Crawford v. Cuomo, 796 F.3d 252, 256 (2d Cir. 2015)) (internal quotation marks omitted); see, e.g., Santiago, 91 F. Supp. 2d at 674 (granting summary judgment in favor of the defendants where the plaintiff satisfied the subjective component of the excessive force standard, but failed to demonstrate that the defendants' "alleged conduct [rose] to the level of a violation of his constitutional rights"); Joseph v. Annucci, No. 18-CV-7197 (NSR), 2020 WL 409744, at *7 (S.D.N.Y. Jan. 23, 2020) ("For a prisoner to prevail on a claim asserting that he was subjected to cruel and unusual punishment, he must prove both 'an objective element . . . and a subjective element[.]'") (quoting Phelps v. Kapnolas, 308 F.3d 180, 185 (2d Cir. 2002), and citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)); Evans v. Balmer, No. 13-CV-805 (MAT), 2017 WL 1106939, at *6 (W.D.N.Y. Mar. 24, 2017) ("Where, as here, the conduct alleged involves an open-handed slap that caused no lasting injury, the

---

[11] "Generally, the failure to allege facts sufficient to establish the objective prong of the analysis renders the claim subject to dismissal unless [plaintiff] can raise a question of fact as to whether [defendant's] conduct was undertaken with malice for the very purpose of causing harm to [plaintiff]." Pigford v. Turriglio, No. 07-CV-687 (FJS/DRH), 2008 WL 4519011, at *4 (N.D.N.Y. Sept. 29, 2008) (citing Blyden, 186 F.3d at 263, and Hudson, 503 U.S. at 9).  "In this case, [plaintiff] has not alleged facts sufficient to indicate that [Davis's] conduct was undertaken with malice."  Id.; see generally Compl.  Specifically, plaintiff has not sufficiently demonstrated that Davis "acted 'maliciously and sadistically,' intending to cause harm."  Beauvoir v. Falco, 345 F. Supp. 3d 350, 367 (S.D.N.Y. 2018) (quoting Perry, 659 F. Supp. 2d at 581).

objective component of an Eighth Amendment excessive force claim cannot be met. Accordingly, [the d]efendants are entitled to summary judgment on [the p]laintiff's excessive force claim[.]") (citations omitted).

As plaintiff has not alleged any conduct that rises above the de minimis threshold required for an excessive force claim against defendant C.O. Davis, it is alternatively recommended that plaintiff's Eighth Amendment claim against Davis be dismissed on the merits. See Blanford v. Banks, No. 9:21-CV-231 (TJM/CFH), 2023 WL 11016348, at *11 (N.D.N.Y. Aug. 28, 2023) ("[The C.O. defendant's] de minimis force caused no injuries to [the inmate] plaintiff and the force ceased as soon as [the] plaintiff was fully restrained. There is no evidence that [the C.O. defendant's] act of pulling [the] plaintiff back and to the ground was done maliciously or sadistically.  Thus, there is no dispute of material fact sufficient to withstand summary judgment.") (citations omitted), report and recommendation adopted, 2024 WL 1558476 (N.D.N.Y. Apr. 10, 2024).  Given the foregoing, it is recommended that defendants' motion for summary judgment on plaintiff's Eighth Amendment claim against Davis be granted.

### C. Plaintiff's First Amendment Claims Against Davis and Munden

The First Amendment protects inmates from retaliation for engaging in protected speech or conduct.  See Varela v. Demmon, 491 F. Supp. 2d 442, 450 (S.D.N.Y. 2007) (citing Graham v. Henderson, 89 F.3d 75, 80 (2d Cir. 1996) ( "[R]etaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983."), and Franco v. Kelly, 854 F.2d 584, 589 (2d Cir. 1988)).  "To prevail on a First Amendment retaliation claim, an inmate must establish '(1) that the

speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected [conduct] and the adverse action.'" Holland v. Goord, 758 F.3d 215, 225 (2d Cir. 2014) (quoting Espinal v. Goord, 558 F.3d 119, 128 (2d Cir. 2009)). "Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." Green v. Martin, 224 F. Supp. 3d 154, 175 (D. Conn. 2016) (internal quotation marks and citations omitted).

"[P]risoner retaliation claims are easily fabricated, and . . . pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration." Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003) (internal quotation marks and citations omitted). Accordingly, the Second Circuit requires courts to "examine prisoners' claims of retaliation with skepticism and particular care." Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995) (citing Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983), overruled on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002)). Thus, "a plaintiff asserting such a claim bears a heightened burden of proof and must plead the claim with particularity." Green v. Phillips, No. 04-CV-10202 (TPG), 2006 WL 846272, at *3 (S.D.N.Y. Mar. 31, 2006) (citations omitted); see also Williams v. Goord, 111 F. Supp. 2d 280, 290 (S.D.N.Y. 2000) ("In recognition of the reality that retaliation claims can be fabricated easily, plaintiffs bear a somewhat heightened burden of proof, and summary judgment can be granted if the claim appears insubstantial.") (internal quotation marks and citation omitted).

Here, plaintiff claims that Davis "smack[ed] [him] in the face" and threatened him with SHU confinement in retaliation for filing grievances against the medical staff, in violation of his First Amendment rights.  Compl. at 16.  Plaintiff also alleges that Munden assaulted him on September 5, 2019, in retaliation for filing the grievances against the medical staff.  See id. at 17.

### 1. Protected Activity

"[I]t is well settled that the filing of administrative grievances and lawsuits constitutes protected speech" to satisfy the first prong of a First Amendment retaliation claim.  Walker v. Senecal, No. 9:20-CV-0082 (AMN/CFH), 2023 WL 3322599, at *6 (N.D.N.Y. Jan. 27, 2023) (citations omitted), report and recommendation adopted, 2023 WL 3051647 (N.D.N.Y. Apr. 24, 2023); see, e.g., Davis v. Goord, 320 F.3d 346, 352-53 (2d Cir. 2003) ("[T]he filing of prison grievances is a constitutionally protected activity."); Mazyck v. Keller, 531 F. Supp. 3d 630, 644 (W.D.N.Y. 2021) ("An inmate's informal complaints or requests as well as formal grievances constitute protected activity under the First Amendment.") (internal quotation marks and citation omitted); Williams v. Ingraham, No. 04-CV-257 (GLS/DRH), 2005 WL 3746222, at *2 (N.D.N.Y. Feb. 3, 2005) ("The [inmate's] conduct at issue—complaints to judicial officials, filing a lawsuit, and grievances—are clearly constitutionally protected rights.") (citing Morales v. Mackalm, 278 F.3d 126, 131 (2d Cir. 2002), abrogated on other grounds by Fabricio v. Annucci, 790 F. App'x 308 (2d Cir. 2019) (summary order)).  Thus, for purposes of this motion, the undersigned will assume that plaintiff has established the first prong of his retaliation claim against Davis and Munden.

### 2. Adverse Action

"[I]t is well settled that physical assault constitutes adverse action, as it is 'conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.'" Mack v. Wood, No. 9:17-CV-1146 (BKS/ATB), 2019 WL 5197230, at *6 (N.D.N.Y. July 26, 2019) (quoting Davis, 320 F.3d at 353) (additional citations omitted), report and recommendation adopted, 2019 WL 4183894 (N.D.N.Y. Sept. 4, 2019); see Baskerville v. Blot, 224 F. Supp. 2d 723, 731-32 (S.D.N.Y. 2002) (finding that a retaliatory assault constitutes adverse action); see also Lewis v. Hanson, No. 9:18-CV-0012 (LEK/DJS), 2022 WL 991729, at *11 (N.D.N.Y. Mar. 31, 2022) (concluding that "a physical assault on a handcuffed prisoner" sufficiently describes an adverse action).  "Indeed, the alleged assault need not rise to the level of an Eighth Amendment excessive force violation in order to be considered an adverse action for purposes of First Amendment retaliation analysis"; "[t]he alleged adverse action need only be capable of deterring a person of ordinary firmness from exercising the constitutional right in question."  Flemming v. King, No. 14-CV-316 (DNH/CFH), 2016 WL 5219995, at *5 (N.D.N.Y. June 20, 2016) (internal quotation marks and citations omitted), report and recommendation adopted, 2016 WL 5173282 (N.D.N.Y. Sept. 21, 2016).

Moreover, "[v]erbal threats may constitute adverse conduct if the threats are sufficiently specific and direct."  Baltas v. Dones, No. 3:22-CV-38 (MPS), 2022 WL 1239989, at *16 (D. Conn. Apr. 27, 2022) (citations omitted); see, e.g., Ford v. Palmer, 539 F. App'x 5, 6 (2d Cir. 2013) (summary order) (finding that a verbal threat constituted adverse action where a correctional officer threatened to poison the plaintiff in retaliation for filing grievances); Quezada v. Roy, No. 14-CV-4056 (CM), 2015 WL 5970355, at *21

(S.D.N.Y. Oct. 13, 2015) ("The line between de minimis verbal harassment and retaliatory adverse action . . . hinge[s] on the specificity and seriousness of the words used; 'The less direct and specific a threat, the less likely it will deter an inmate from exercising his First Amendment rights.'") (quoting Mateo v. Fischer, 682 F. Supp. 2d 423, 434 (S.D.N.Y. 2010)).  Thus, for purposes of this motion, the undersigned will also assume that plaintiff has satisfied the second prong.

### 3. Causal Connection

"Allegations of adverse actions alone, however, are insufficient to establish retaliation absent facts supporting an inference of a causal connection between the adverse actions and the protected conduct."  Baskerville, 224 F. Supp. 2d at 732 (citations omitted).  Indeed, the plaintiff "bears the burden of showing . . . that the protected conduct was a substantial or motivating factor in the prison officials' decision to" take the alleged adverse action.  Gayle v. Gonyea, 313 F.3d 677, 682 (2d Cir. 2002) (internal quotation marks and citation omitted).  "Circumstantial factors indicating retaliatory motive include: (1) temporal proximity between the protected activity and the alleged retaliatory act; (2) an inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; and (4) statements by the defendant concerning his motivation."  Moore v. Peters, 92 F. Supp. 3d 109, 121 (W.D.N.Y. 2015) (citing Baskerville, 224 F. Supp. 2d at 732).  With regard to temporal proximity, the Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action."  Gorman-Bakos v. Cornell Co-op. Extension of Schenectady Cnty., 252 F.3d 545, 554 (2d Cir. 2001); see Roseboro v.

23

Gillespie, 791 F. Supp. 2d 353, 370 (S.D.N.Y. 2011) ("[Although] '[a] plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action[,]' [s]uch circumstantial evidence of retaliation, . . . without more, is insufficient to survive summary judgment.") (quoting Espinal, 558 F.3d at 129).

Here, plaintiff has asserted a close temporal proximity between his protected conduct and the alleged adverse actions, as he indicates that he submitted his grievances against the medical staff on September 3, 2019, that Davis smacked and threatened him on September 4, 2019, and Munden assaulted him on September 5, 2019.  See Compl. at 10-12.  "However, 'temporal proximity alone is insufficient to establish an inference of retaliation,' and the summary judgment record is devoid any other circumstantial evidence that supports an inference of retaliation."  Hamilton v. New York State Dep't of Corr. & Cmty. Supervision, No. 9:18-CV-1312 (MAD/CFH), 2021 WL 5095962, at *27 (N.D.N.Y. Aug. 18, 2021) (quoting Thomas v. Waugh, No. 9:13-CV-0321 (MAD/TWD), 2015 WL 5750945, at *4 (N.D.N.Y. Sept. 30, 2015)), report and recommendation adopted sub nom. Hamilton v. Annucci, 2021 WL 4316747 (N.D.N.Y. Sept. 23, 2021).  In fact, defendants have proffered evidence establishing that plaintiff's grievances were not a "substantial or motivating factor" in Davis's and Munden's alleged actions.  Burton v. Lynch, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009); see Rucano v. Annucci, No. 9:18-CV-218 (GTS/CFH), 2021 WL 3293504, at *18 (N.D.N.Y. May 19, 2021) (determining that the plaintiff's protected activity was not "a substantial or motivating factor" in the C.O. defendant's decision to issue a misbehavior report where the defendant had no knowledge of the plaintiff's protected activity), report and

recommendation adopted sub nom. Rucano v. Venettozzi, 2021 WL 3292394 (N.D.N.Y. Aug. 2, 2021); see also Van Dunk v. Brower, No. 11-CV-4564 (ER), 2013 WL 5970172, at *9 (S.D.N.Y. Nov. 7, 2013) ("'To prove a causal connection, the plaintiff must demonstrate that the individuals who engaged in retaliation had knowledge of the protected conduct.'") (quoting Deal v. Seneca Cnty., No. 07-CV-6497 (MAT), 2012 WL 13661, at *6 (W.D.N.Y. Jan. 4, 2012)).

Specifically, Davis and Munden each submitted a sworn declaration stating that they had no knowledge that plaintiff filed grievances against the medical staff.[12]  See Dkt. No. 60-4 at 3, ¶13 (declaring that he, Davis, "did not know about any prior grievances [p]laintiff had filed against officers at Greene C.F., or any other correctional facility, nor did [he] retaliate against [p]laintiff in any way or at any time"); see also Dkt. No. 60-5 at 2, ¶6 (asserting that he, Munden, "had no knowledge of any grievances [p]laintiff allegedly filed at Franklin or any other Correctional Facility, and [he] did not have a conversation with [p]laintiff about these purported grievances"); Chapple v. Keane, 903 F. Supp. 583, 585 (S.D.N.Y. 1995) (dismissing retaliation claim where the officer, who allegedly took adverse action, declared under oath that he had no knowledge of the plaintiff's prior complaints); Perez v. Keysor, No. 9:10-CV-0518 (LEK/CFH), 2013 WL 5493932, at *15 (N.D.N.Y. Sept. 30, 2013) (finding no causal connection where the plaintiff's "conclusory and speculative allegations" that the

---

[12] Plaintiff has not responded to these contentions.  See generally Dkt. No. 67; see also Henson v. Gagnon, No. 9:13-CV-0590 (GTS/TWD), 2015 WL 9809874, at *12-13 (N.D.N.Y. Dec. 10, 2015) (dismissing the inmate plaintiff's First Amendment retaliation claim for failure to establish causal connection where the C.O. defendant submitted a sworn statement that he had no knowledge of the plaintiff's grievance against him at the time of the alleged adverse action, and the plaintiff offered no evidence to refute the defendant's sworn statement), report and recommendation adopted, 2016 WL 204494 (N.D.N.Y. Jan. 15, 2016).

defendants knew of his prior grievance were contrary to the defendants' declarations stating that they had no knowledge of such grievance); Shaheen v. Filion, No. 9:04-CV-625 (FJS/DRH), 2006 WL 2792739, at *3 (N.D.N.Y. Sept. 17, 2006) (dismissing retaliation claim where the inmate plaintiff "provide[d] no evidence to demonstrate that any defendant had any knowledge of his complaints . . . prior to the [adverse action]," and to which the defendants "provided a declaration stating that he or she was unaware of any of [the plaintiff's] writings that criticized prison officials and conditions").

Thus, plaintiff has failed to demonstrate that his grievances against the medical staff were a "substantial or motivating factor" in Davis's and Munden's alleged actions. Gayle, 313 F.3d at 682; see, e.g., Cooper v. A. Annucci, No. 9:18-CV-762 (GTS/CFH), 2020 WL 8474802, at *7 (N.D.N.Y. Nov. 9, 2020) (recommending dismissal of the plaintiff's First Amendment retaliation claim where the plaintiff failed to establish a causal connection between the defendant's action and his filing of a complaint, when the defendant submitted a sworn declaration stating she was not informed that plaintiff filed a complaint), report and recommendation adopted sub nom. Cooper v. DeGraff, 2021 WL 235946 (N.D.N.Y. Jan. 25, 2021); Kuczinski v. City of New York, No. 17-CV-7741 (JGK), 2020 WL 4016447, at *6 (S.D.N.Y. July 16, 2020) (finding no causal connection to support a First Amendment retaliation claim where the defendants introduced evidence demonstrating that they had no knowledge of the plaintiff's protected speech at the time they took the alleged adverse action against the plaintiff).

As such, summary judgment is warranted on plaintiff's First Amendment claims against Davis and Munden.  It is, therefore, alternatively recommended that plaintiff's

First Amendment claim against Davis be dismissed on the merits.  It is also recommended that plaintiff's First Amendment claim against Munden be dismissed.

### IV. Other Defendants

Plaintiff filed his complaint on or about May 4, 2022, also naming John Doe #1, John Doe #2, and John Doe #3 as defendants.  See Compl. at 2-3.  In the more than two years that have passed, plaintiff has not identified the John Doe defendants, and has not served process upon them.  "This failure is not the result of lack of opportunity." Santiagocruz v. Doe #4, No. 9:21-CV-0806 (TJM/ML), 2023 WL 9600956, at *1 n.1 (N.D.N.Y. Dec. 15, 2023), report and recommendation adopted sub nom. Santiagocruz v. Gordon, 2024 WL 532499 (N.D.N.Y. Feb. 8, 2024).

Plaintiff argues in his response to defendants' motion that the Court "did not provide [him] with Valentino assistance" in order to "make sure that [the John Doe] defendants were identified and properly served."  Dkt. No. 67 at 2 (citing Valentin v. Dinkins, 121 F.3d 72 (2d Cir. 1997)).[13]  However, plaintiff has had more than two years—far more than the typical 120-day period—to identify and serve defendants John Doe #1, John Doe #2, and John Doe #3, and the Court is under no obligation to extend the deadline indefinitely.  See, e.g., Taft v. Fricke, No. 9:17-CV-0346 (GTS/CFH), 2019 WL 5197180, at *1 n.2 (N.D.N.Y. July 26, 2019) (recommending sua sponte dismissal of the pro se plaintiff's claims against the John Doe defendants where the plaintiff had not identified or served process upon the John Doe defendants within two years of filing the

---

[13] "In Valentin, 121 F.3d at 75-75, the Second Circuit held that district courts must assist pro se incarcerated litigants with their inquiry into the identities of unknown defendants."  Johnson v. Cnty. of Saratoga, No. 9:18-CV-0096 (DNH/DEP), 2018 WL 10910742, at *9 n.9 (N.D.N.Y. Feb. 21, 2018).

complaint), <u>report</u> and <u>recommendation</u> <u>adopted</u>, 2019 WL 4744225 (N.D.N.Y. Sept. 30, 2019); <u>Thomas v. Keane</u>, 99-CV-4302 (DC), 2001 WL 410095, at *1, *5 (S.D.N.Y. April 23, 2001) (dismissing a claim under Fed. R. Civ. P. Rule 4(m) where the pro se plaintiff failed to serve the John Doe defendants within roughly two years of filing complaint); <u>Waldo v. Goord</u>, 97-CV-1385 (LEK/DRH), 1998 WL 713809, at *5 (N.D.N.Y. Oct. 1, 1998) (dismissing a claim under Fed. R. Civ. P. Rule 4(m) where the pro se plaintiff failed to serve the John Doe defendants within a year of filing his complaint).  It is, therefore, recommended that plaintiff's claims against defendants John Doe #1, John Doe #2, and John Doe #3 be dismissed without prejudice for lack of timely service.

Plaintiff also named "Correctional Officer Paige" as a defendant in this action. Compl. at 2, 12.  However, defendants assert that there was no officer at Franklin C.F. with the last name Paige.  <u>See</u> Dkt. No. 60-1 at 6.  Specifically, a "diligent search of DOCCS' records for any DOCCS' employees working at Franklin C.F. relating to [p]laintiff's instant allegations" revealed that "there was no correction officer with the last name Paige or Page that worked at Franklin C.F. during the relevant time period."  Dkt. No. 60-6 at 2.  Plaintiff was advised of this on January 20, 2023, but made no efforts to further identify this individual.  <u>See</u> Dkt. No. 20 at 1 n.1.[14]  Thus, it is also recommended that plaintiff's claims against defendant C.O. Paige be dismissed.  <u>See</u> <u>Robinson v. New York State Dep't of Correction Servs.</u>, No. 9:08-CV-0911, 2009 WL 3246818, at *6 n.10, *10 (N.D.N.Y. Sept. 30, 2009) (dismissing the pro se inmate plaintiff's claims against

---

[14] Although a C.O. Paige appears to have been served, defendants note that "[a] non-party Office Assistant employed at Franklin Correctional Facility inadvertently accepted service on behalf of both Defendant Davis and Paige before confirming each defendant's presence and employment."  Dkt. No. 20 at 1 n.1 (citing Dkt. No. 17).  Defendants reiterate that "upon information and belief, [C.O. Paige] does not exist."  <u>Id.</u>

"Chenneham" where the plaintiff was notified "that there was no employee with a last name of 'Chenneham' employed at Wallkill Correctional Facility" and the plaintiff did not provide "any other identify information about this defendant"); see also Reed v. Hartford Police Dep't, No. 3:03-CV-2147 (SRU/WIG), 2006 WL 2349591, at *4 (D. Conn. July 25, 2006) (dismissing the plaintiff's claims against "Police Officer Drew" where the personnel manager for the Hartford Police Department "state[d] that personnel records reveal[ed] that no person with the last name Drew or named Drew Johnson ever worked for the Hartford Police Department"); Mason v. City of Philadelphia, No. 13-CV-5163, 2014 WL 4722640, at *4 n.16 (E.D. Pa. Sept. 22, 2014) ("[The m]oving [d]efendants assert that there are no police officers employed by the City by the names of 'Miston,' 'Diguisse,' 'Larks,' 'Sath,' or 'Meril.'  Because [the p]laintiff has failed to give us any information at all as to the identity of these individuals, we dismiss them as [the d]efendants in this action.").

## V. Conclusion

   **WHEREFORE**, for the reasons set forth above, it is hereby:

   **RECOMMENDED**, that defendants' motion for partial summary judgment (Dkt. No. 60) be **GRANTED**; and it is further

   **RECOMMENDED**, that plaintiff's First and Eighth Amendment claims against Davis be **DISMISSED with prejudice**; and it is

   **RECOMMENDED**, that plaintiff's First Amendment claim against Munden be **DISMISSED with prejudice**; and it is

**RECOMMENDED**, that C.O. Paige and the John Doe defendants be **DISMISSED** from this action **without prejudice**, due to plaintiff's failure to identify and/or serve these defendants; and it is

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED R. CIV. P. 6(a), 6(e), 72.[15]

Dated: August 13, 2024
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

_____

[15] If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. See FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  See id. § 6(a)(1)(C).